**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **MAGISTRATE NUMBER 26-457** |
| | : | |
| | : | |
| **SADE GUPPY** | : | |

**O R D E R**

**AND NOW**, this day of , 2026, having considered Defendant's Motion to Dismiss the Information, the government's response thereto, and having heard oral argument on this matter, it is hereby **ORDERED** that the Motion is **GRANTED**. The Information in the above-captioned matter is hereby **DISMISSED WITH PREJUDICE**.

**BY THE COURT**

______________________________
**THE HONORABLE CRAIG M. STRAW**
**United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **MAGISTRATE NUMBER 26-457** |
| | : | |
| | : | |
| **SADE GUPPY** | : | |

**DEFENDANT'S MOTION TO DISMISS THE INFORMATION**

Defendant Sade Guppy, by and through her attorney, Angela Levy, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, moves for an order dismissing the Information against her. The government charged Ms. Guppy in a one-count Information with an alleged misdemeanor violation of 18 U.S.C. § 611. Section 611 is facially unconstitutional and/or it is unconstitutional as applied to Ms. Guppy. As such, the Information must be dismissed.

**WHEREFORE**, for all the reasons set forth in the accompanying Memorandum of Law, incorporated here by reference, Ms. Guppy respectfully requests that the Court enter an order dismissing the Information against her with prejudice.

Respectfully submitted,

*/s/ Angela Levy*
ANGELA LEVY
Assistant Federal Defenders

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **MAGISTRATE NUMBER 26-457** |
| | : | |
| | : | |
| **SADE GUPPY** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE INFORMATION**

Sade Guppy was charged in a one-count Information with the misdemeanor offense of knowingly voting in a federal election as a noncitizen in violation of 18 U.S.C. § 611. Congress did not have the constitutional power to enact this statute as States alone can establish the qualifications of electors for federal elections. Congress can only regulate the time, place, and manner of elections. In enacting Section 611, Congress exceeded its enumerated powers by attempting to regulate voter qualifications. At a minimum, Section 611 is unconstitutional as applied to Ms. Guppy, who is alleged to have voted within the Commonwealth of Pennsylvania. Ms. Guppy also asserts that Section 611 is facially unconstitutional. The Information must be dismissed with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

Specifically, the government alleges that Ms. Guppy voted on November 8, 2022, in Philadelphia in an election held, in part, for the purpose of electing a candidate for the office of United States Senator. On or about September 23, 2026, the government charged Ms. Guppy in a one-count misdemeanor Information. Ms. Guppy was arrested on September 24, 2026. She appeared before Magistrate Judge Caroline Goldner Cinquanto that same day and consented to

proceed before a Magistrate Judge. Ms. Guppy files this motion to dismiss, which, to the best of her knowledge, is a case of first impression in this District. Until recently, the United States Attorney's Office for the Eastern District of Pennsylvania has rarely – if ever – prosecuted an alleged violation of Section 611.

## II. DISCUSSION

### A. Standard of Review

Ms. Guppy's instant motion to dismiss raises only issues of law; there are no factual issues that require determination at a trial. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (consideration of pretrial motion to dismiss indictment generally proper where "purely legal question" is presented); *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976) ("[g]enerally, motions are capable of determination before trial if they raise questions of law rather than fact"). Ms. Guppy raises a pure question of law: whether 18 U.S.C. § 611 is constitutional on its face and/or as applied to her. As such, the instant motion is properly before the Court pretrial.

### B. Because Congress is not authorized to establish voter eligibility, Section 611 exceeds Article I's enumerated powers.

Section 611, a statute enacted forty years ago, states, in relevant part:

> (a) It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner, unless –
>
> (1) the election is held partly for some other purpose;
>
> (2) aliens are authorized to vote for such other purpose under a State constitution or statute or a local ordinance; and

(3) voting for such other purpose is conducted independently of voting for a candidate for such Federal offices, in such a manner than an alien has the opportunity to vote for such other purpose, but not an opportunity to vote for a candidate for any one or more of such Federal offices.

(b) Any person who violates this section shall be fined under this title, imprisoned not more than one year, or both.

Ms. Guppy asserts that Congress exceeded its constitutional authority in enacting Section 611. "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Bond v. United States*, 572 U.S. 844, 854 (2014). Congress lacks a police power – the "broad authority to enact legislation for the public good" – and "can exercise only the powers granted to it." *Id.* (citation omitted). It can enact only those laws "necessary and proper for carrying into Execution" its enumerated powers, *id.* (quoting U.S. Const., art I, § 8, cl. 18), and a crime committed within a State "cannot be made an offence against the United States, unless it [has] some relation to the execution of a power of Congress," *id.* (quoting *United States v. Fox*, 95 U.S. 670, 672 (1878)). In short, Congress's criminal laws must be grounded in an enumerated power.

Fatal to any argument the government may raise in opposition is the fact that *no part* of the Constitution authorizes Congress to exclude certain classes of people from the franchise. States possess the "constitutional authority to establish qualifications (such as citizenship) for voting," so while Congress can "regulate *how* federal elections are held," it cannot regulate "*who* may vote in them." *Arizona v. Inter Tribal Council of Arizona, Inc. ("ITCA")*, 570 U.S. 1, 16 (2013)(emphasis in original). It is a "straightforward rule" that States, not the federal government, determine voter qualifications. *See id.* Section 611 can only be construed as a statute that establishes a voter qualification, which plainly runs afoul of that "straightforward rule."

Ms. Guppy will address below each provision of the Constitution related to voting and will demonstrate why none of them grant Congress the authority to regulate voter qualification. Those provisions are 1) the Voter Qualification Clauses; 2) the Suffrage Amendments enacted following the Civil War; and 3) the Elections Clause.

1. The Constitution's Federal Voter Qualification Clauses do not authorize Congress to establish voter qualifications.

The original Constitution does not grant an affirmative right to vote. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 n.78 (1973) ("[T]he right to vote, per se, is not a constitutionally protected right."). Nor do any of the amendments in the Bill of Rights pertain to suffrage. *See* U.S. Const. amends. I–X.

Rather, the Constitution contains two Voter Qualification Clauses. Specifically, Article I provides that in elections for the U.S. House of Representatives, "the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. art. I, § 2, cl. 1. The Seventeenth Amendment later applied the same requirement to U.S. Senate elections. U.S. Const. amend. XVII. These constitutional provisions offer a *limited* right to vote: anyone eligible to participate in a state legislative election must also be allowed to participate in that state's federal elections. *See United States v. Classic*, 313 U.S. 299, 314-15, 325 (1941) (holding that under Article I's Voter Qualification Clause, qualified voters have a constitutional right to have their votes counted in federal primary elections for the U.S. House). By tying federal suffrage to state suffrage, the Framers provided *who* could vote in federal elections—without dictating voter qualifications to the States.

For almost two centuries following the Founding, the task of determining voter qualifications fell exclusively to the States. *See* Jamin B. Raskin, *Legal Aliens, Local Citizens:*

*The Historical, Constitutional and Theoretical Meanings of Alien Suffrage*, 141 U. Pa. L. Rev. 1391, 1399–1417 (1993). Congress's enactment of § 611 in 1996, dictating voter qualifications to the States, is a stark deviation from this tradition. And during the many years when the States solely determined voter qualifications, it is notable that they did not always tie the franchise to citizenship. Indeed, before the Revolution, the colonies welcomed property-owning, Christian white males to vote regardless of their citizenship. For example, in the 1700s French Huguenots could vote in the colony of South Carolina, and Germans voted and were elected to office in colonial Pennsylvania. *See id.* at 1399.

After the Founding, the practice of granting noncitizens the franchise endured. Early state laws often enfranchised qualified "inhabitants" of a state as opposed to "citizens." Gerald M. Rosberg, *Aliens and Equal Protection: Why Not the Right to Vote?*, 75 Mich. L. Rev. 1092, 1095–97 (1977). Some states, like Virginia and Vermont, explicitly allowed noncitizens to vote and Pennsylvania granted suffrage to noncitizens who lived there for at least two years. *See* Raskin, 141 U. Pa. L. Rev. at 1399. The practice was so prevalent that even the Supreme Court recognized the power of the States to let noncitizens vote: "citizenship has not in all cases been made a condition precedent to the enjoyment of the right of suffrage." *Minor v. Happersett*, 88 U.S. 162, 177 (1874).

In sum, voter qualifications are prescribed by the States. *See* U.S. Const. art. I, § 2, cl. 1; U.S. Const. amend. XVII. The Voter Qualification Clauses grant the States the *exclusive* power to determine voter qualifications. *See Inter Tribal Council,* 570 U.S. at 17 (explaining that the Voter Qualification Clauses "explicitly" regulate voter qualifications and "clear[ly]" state what Congress "cannot control" (citation and quotation omitted)).

2. The Suffrage Amendments restrain the States' power to establish voter qualifications, but they do not grant the federal government the affirmative power to establish qualifications.

Next are the Constitution's restraints on the power of the States to set voter qualifications. Following the Civil War, several amendments were enacted to restrict the power of the States to discriminatorily limit voter eligibility. As the following will show, these provisions restrain State power, but they do not grant the federal government an affirmative power to establish voter qualifications.

Various amendments foreclose the States from disqualifying voters on certain enumerated and impermissible grounds. Specifically, the Fourteenth Amendment, prohibiting States from denying to any person "the equal protection of the laws," U.S. Const. amend. XIV, § 1, has been construed to bar the States from imposing qualifications that "invidiously discriminate," *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666 (1966). Likewise, the Fifteenth Amendment ("race, color, or previous condition of servitude"), the Nineteenth Amendment (sex), the Twenty-Fourth Amendment ("failure to pay any poll tax or other tax"), and the Twenty-Sixth Amendment (voter age) all prohibit the restriction of voter qualifications on their specified bases.

These amendments each contain an Enforcement Clause, permitting Congress to enforce them through legislation. But these clauses are limited to enforcement through "remedial" action rather than permitting substantive change to the law. *See South Carolina v. Katzenbach*, 383 U.S. 301, 326 (1966) ("Congress has full *remedial* powers to effectuate [a] constitutional prohibition[.]" (emphasis added)); *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997) (explaining that the originally proposed Enforcement Clause "gave Congress too much

legislative power at the expense of the existing constitutional structure," resulting in Congress adopting a more limited-scope provision). Thus, Congress's power under the Enforcement Clauses "is limited to adopting measures to enforce the guarantees of the [respective] Amendment," and grants "no power to restrict, abrogate, or dilute these [constitutional] guarantees." *Katzenbach v. Morgan*, 384 U.S. 641, 651 n.10 (1966).

The Suffrage Amendments, therefore, do not give Congress the authority to prohibit a noncitizen from voting. Various post-Civil War amendments authorize Congress to pass laws prohibiting the restriction of the franchise for discriminatory reasons, yet these statutes do not independently authorize Congress to set or establish voter qualifications. Nor can it be said that Section 611 is authorized by the Enforcement Clauses in any of these amendments; Congress unilaterally prohibiting noncitizens from voting has nothing to do with ensuring that people are not impermissibly disenfranchised on the basis of race, sex, the inability to pay a poll tax, or age. *See Flores*, 521 U.S. at 520 (explaining that Congress's power to legislate pursuant to the Fourteenth Amendment's Enforcement Clause must be congruent to the constitutional injury to be remedied).

3. The Elections Clause does not authorize Congress to establish voter qualifications.

Finally, the Elections Clause fails to authorize Section 611. It provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations[.]" U.S. Const. art. I, § 4, cl. 1. The plain text of the clause, the Supreme Court's precedent construing it, and the structure of the Constitution all point to the same conclusion: the Elections Clause does not authorize Congress to establish voter qualifications.

The starting point is the plain text of the Elections Clause. *See, e.g., N.Y. State Rifle &*

*Pistol Ass'n v. Bruen*, 597 U.S. 1, 20 (2022) (explaining that a "textual analysis" is the springboard to determine the "normal and ordinary" meaning of a constitutional provision (citation omitted)). By its plain terms, the clause allows Congress to make or alter regulations about the "times" of elections (when they will be held); the "places" of elections (where they will be held); and the "manner" of elections (how they will be held). The ordinary meaning of those clear and straightforward terms shows that the Elections Clause grants Congress a procedural power to regulate *how* elections are conducted, without granting it the substantive power to decide *who* can vote.

And this is consistent with how the Supreme Court has interpreted the clause. The Court has spoken clearly: "the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them." *Inter Tribal Council*, 570 U.S. at 16. (emphasis in original). Given the unambiguous text of the time-place-and-manner regulation, "[p]rescribing voting qualifications . . . 'forms no part of the power to be conferred upon the national government' by the Elections Clause, which is 'expressly restricted to the regulation of the *times,* the *places,* and the *manner* of elections.'" *Id.* (quoting The Federalist No. 60, at 371 (A. Hamilton)) (emphasis in original); *see also* The Federalist No. 52, at 326 (J. Madison) (same); 2 Records of the Federal Convention 203 (Farrand ed. 1911)("[T]he right of suffrage is certainly one of the fundamental articles of republican Government, and ought not to be left to be regulated by" Congress).

The text's ordinary meaning is buttressed by the Constitution's structure. A key interpretative principle is that expressing one thing implies the exclusion of unmentioned things. *Bittner v. United States*, 598 U.S. 85, 94 (2023) (explaining the *expressio unius est exclusio alterius* canon). This doctrine applies to Constitutional interpretation. *See Powell v.*

*McCormack*, 395 U.S. 486 (1969) (concluding that because the Constitution expressly lists qualifications for U.S. Representatives, the House cannot add others). And it resolves who is the sole entity empowered to determine voter qualifications: the States.

"The Constitution prescribes a straightforward rule for the composition of the federal electorate," *Inter Tribal Council*, 570 U.S. at 16; as discussed in Part IIA, the Voter Qualification Clauses in Article I and the Seventeenth Amendment tie "the federal franchise to the state franchise," *id.* at 17. Because these clauses expressly regulate voter qualifications, they preclude reading the Elections Clause to cover qualifications: "One cannot read the Elections Clause as treating implicitly what these other constitutional provisions regulate explicitly." *Id*. at 16; *see also Oregon v. Mitchell*, 400 U.S. 112, 210 (1970) ("It is difficult to see how words could be clearer in stating what Congress can control and what it cannot control. Surely nothing in these provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress.") (Harlan, J., concurring in part and dissenting in part); *id.* at 288 ("It is plain, in short, that when the Framers meant qualifications, they said 'qualifications.' That word does not appear in [the Elections Clause].")(Stewart, J., concurring in part and dissenting in part).[1]

**C. A Recent Out-of-District Decision Supports Ms. Guppy's Motion to Dismiss.**

As the Department of Justice has prioritized the prosecution of alleged noncitizen voting, this issue has been litigated in a handful of districts throughout the country. Of note, Ms. Guppy is aware of a recent decision from a District Judge in the Southern District of Florida. Judge Leibowitz granted the Defendant's motion to dismiss the Information and issued a thorough

[1] As the Supreme Court later recognized in *Inter Tribal Council*, "[f]ive Justices" in *Mitchell* "took the position that the Elections Clause did *not* confer upon Congress the power to regulate voter qualifications in federal elections." 570 U.S. at 16 n.8. As such, the decision "lacked a majority rationale" and "precedential value." *Id.*

Memorandum Opinion and Order. *United States v. Cox*, 25-cr-249-DSL (FLSD ECF 64). A copy of Judge Leibowitz's opinion is attached hereto as Exhibit A. In the Cox case, given the novelty of the legal issue and lack of precedent, Judge Leibowitz appointed Attorney Paul D. Clement as *amicus curiae* to brief the issue – whether Congress had the constitutional authority to enact Section 611 – for the Court. Attorney Clement submitted a Memorandum of Court-Appointed *Amicus Curiae*, which fully briefed the issue and concluded that Section 611 is likely unconstitutional. A copy of the *amicus curiae* memorandum is attached hereto as Exhibit B. Together, Exhibits A and B contain deeply researched briefing and legal analysis regarding this issue of first impression.

In his opinion, Judge Leibowitz does not mince words: "the text, structure, and original public meaning of the Constitution show that *Congress does not have the constitutional power to enact this statute.*" Exhibit A, p. 1 (emphasis in original). Judge Leibowitz concluded

> [] the Court in this rare case is presented with the actual text of Section 611. And our Constitution does not allow the federal government to prosecute [defendant] Cox under that statute for voting in a federal election. To hold otherwise would violate the careful balance of powers explicitly erected by the People who framed and ratified our great Charter. To hold otherwise would allow Congress to establish and modify the parameters of *its own special electorate*, entirely divorced from what Florida or any other State may decide. That result is *precisely* what our federal constitutional republic does not allow.

Exhibit A at p. 30 (emphasis in original).

**D. As applied to Ms. Guppy, Section 611 is unconstitutional.**

As outlined above, Ms. Guppy argues that Section 611 is facially unconstitutional. However, she acknowledges that to prevail on a facial challenge, she must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). As noted by Attorney Clement in the *Amicus* Memorandum attached at Exhibit

B, there is, perhaps, one conceivable scenario where Section 611 is constitutional: "federal elections in the District of Columbia where there is no applicable state law setting voter qualifications." Exhibit B at p. 47 (p. 38 of the *Amicus* Memorandum). Attorney Clement thus concludes that Section 611 is unconstitutional as applied to noncitizens in the States. *See id.*

To the extent the Court concludes that Ms. Guppy's facial challenge to Section 611 as outlined above fails, she also raises an "as-applied" challenge. Because Ms. Guppy is alleged to have voted in Philadelphia – not the District of Columbia – the narrow exception identified by Attorney Clement does not apply here. The federal government cannot dictate voter qualification to Pennsylvania. As such, Ms. Guppy respectfully urges the Court to grant her motion and dismiss the Information.

## III. CONCLUSION

For all the reasons set forth more fully above, Section 611 is unconstitutional and the Information against Ms. Guppy must be dismissed with prejudice.

Respectfully submitted,

*/s/ Angela Levy*
ANGELA LEVY
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Angela Levy, Assistant Federal Defenders, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have filed and served a copy of the attached Motion to Dismiss the Information via Electronic Court Filing, which sent notification to Michael R. Miller, Assistant United States Attorney, whose office is located at Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania, 19106.

*/s/ Angela Levy*
ANGELA LEVY
Assistant Federal Defender

DATE: October 8, 2026